UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JULIA V. PENALVER,

        Plaintiff,

-against-

SOCIAL SECURITY ADMINISTRATION,

        Defendant.
---------------------------------------------------------------x

**MEMORANDUM & ORDER**
19-cv-01878

**ANN M. DONNELLY**, United States District Judge:

On March 26, 2019, the *pro se* plaintiff filed a complaint against the Social Security Administration alleging that it retaliated against her for filing a 2013 complaint alleging discrimination. (ECF No. 1 at 10-14; ECF No. 16 at 3.)[1] On July 12, 2019, the defendant moved to dismiss the complaint (ECF No. 9), which the plaintiff opposed in a series of letters (ECF Nos. 14-16).[2] For the reasons discussed below, the plaintiff's complaint is dismissed.

---

[1] The Court refers to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

[2] The defendant moved for summary judgment in the alternative and filed a 56.1 statement. Although Rule 56 permits a party to move for summary judgment "at any time," Fed R. Civ. P. 56(b), pre-discovery summary judgment "is the exception rather than the rule and will be granted only in the clearest of cases." *Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A.*, 247 F. Supp. 2d 352, 359-60 (S.D.N.Y. 2002) (internal quotation marks and citations omitted). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (citations omitted). Moreover, in light of the plaintiff's *pro se* status, I am reluctant to accelerate the litigation to summary judgment without providing her the opportunity to conduct discovery. *Booker v. Griffin*, No. 16-CV-00072, 2018 WL 1614346, at n.3 (E.D.N.Y. Mar. 31, 2018). Accordingly, I analyze the defendants' motion as a motion to dismiss only.

1

## BACKGROUND[3]

The plaintiff began working for the Social Security Administration in the Office of Hearings and Appeals in 1985. (ECF No. 1 at 8.) Over the next fifteen years, the plaintiff's managers promoted her several times and recognized the quality of her work with awards, bonuses, and positive performance reviews. (*Id.* at 9.) In 2001, the plaintiff's managers promoted her to a paralegal specialist, a position she held until 2008. (*Id.*) As a paralegal specialist, the plaintiff assisted Administrative Law Judges in reviewing records and drafting opinions. (*Id.*)

From 2008 to 2010, the plaintiff held a temporary supervisory role in which she managed decision writers, including paralegal specialists and attorneys. (*Id.*) Although the defendants commended the plaintiff's performance, they did not select her to be a permanent supervisor, and she resumed her job as a paralegal specialist. (*Id.* at 9-10.) On July 8, 2013, the plaintiff filed a Title VII complaint in this Court alleging that the Social Security Administration did not award her the permanent supervisor position in retaliation for her prior complaints to the EEOC and her cooperation with EEOC investigations. (ECF No. 16 at 3, *Penalver v. United States of America*, 13-CV-03774.)[4]

---

[3] All facts are taken from the complaint and the plaintiff's opposition letters. (ECF Nos. 1, 14-16.) "[A]lthough courts generally will not accept factual allegations raised for the first time in opposition to a motion to dismiss, some courts have construed the mandate to read a *pro se* plaintiff's papers liberally as allowing for consideration of such allegations." *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 9485647, at *1 n.1 (E.D.N.Y. Feb. 23, 2017), *report and recommendation adopted*, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017) (internal quotation marks and citation omitted) (collecting cases).

[4] I take judicial notice of the plaintiff's filings in prior actions in the Eastern District of New York, as the Court may consider matters of public record when deciding a motion to dismiss. *See Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 29-30 (2d Cir. 2006). However, I consider the documents filed "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (citation omitted).

The plaintiff's supervisors started criticizing her work in February of 2014, during the settlement negotiations. (ECF No. 1 at 10.) Deborah Williams, the plaintiff's immediate supervisor, told her that her performance was suffering and that she would be placed on "100 percent quality review," which meant that supervisors would edit her work before it was given to the ALJs. (*Id.*) Ms. Williams told the plaintiff that her supervisor, Jamie Hanlon, mandated the quality review. (*Id.*) The parties settled the lawsuit in March of 2014.

In November of 2014, Ms. Hanlon assigned the plaintiff a new direct supervisor, Megan Wada. (*Id.* at 11.) Although they had worked together for less than two months, Ms. Wada gave the plaintiff a poor performance review in which she described the plaintiff as "combative." (*Id.*) The plaintiff was offended by the description, and asked Ms. Wada to remove it from the file, but Ms. Wada refused. (*Id.*) Six months later, in May of 2015, Ms. Wada placed the plaintiff on a performance assessment plan, which restricted her from working directly with ALJs and from working overtime for pay. (*Id.* at 12.) Ms. Wada also assigned the plaintiff a mentor—which the plaintiff had requested in the past—but required that all communications between the plaintiff and her mentor pass through Ms. Wada. (*Id.*)

Although the performance assessment plan ended in 2016, the plaintiff's work continued to undergo quality review and she was still unable to work overtime for pay. (*Id.*) On occasion, the plaintiff bypassed the quality review protocol and gave her drafts directly to the ALJs, who finalized them with minimal changes. (*Id.* at 12-13.) But for the most part, the plaintiff complied with the quality review program, which resulted in a backlog of her assignments because of the multiple rounds of edits. (*Id.*) The ALJs held the plaintiff responsible for the backlog, which caused her stress and frustration. (*Id.* at 13.) The plaintiff's supervisors did not

allow her time during the workday to use the Employee Assistance Program, and they continued to restrict her communications with her mentor and the ALJs. (*Id.* at 12, 13.) At one point in 2016, Ms. Wada wrote a note to another supervisor in which she described the plaintiff as "learning disabled," a description that upset the plaintiff greatly. (*Id.* at 13.) At this point, the plaintiff was continuing her EAP counseling outside of work to handle her emotional stress. (*Id.* at 12, 13.) The plaintiff now sees a private therapist and psychiatrist. (ECF No. 16 at 3.)

In 2016, the plaintiff filed a complaint with the Equal Employment Opportunity Commission, alleging that the defendants were harassing her in retaliation for her 2013 lawsuit. (*Id.* at 2.) In January of 2017, while the complaint was pending, the plaintiff was terminated from her job. (ECF No. 1 at 14.) The next month, the plaintiff, through her union, requested arbitration pursuant to the agency's negotiated grievance system to challenge her termination as retaliation for her 2013 lawsuit. (ECF No. 16 at 6-7; *see also* ECF No. 10 at 16, 18-48.)[5]

Around the same time, the plaintiff asked her lawyer to file a complaint in federal court alleging that the defendants harassed her at work, but directed him not to include any facts or claims relating to her termination, because "the union will be handling the termination." (ECF No. 16 at 7.) The plaintiff's counsel filed her complaint on March 10, 2017, before the Honorable Carol Bagley Amon, captioned *Penalver v. Social Security Administration*, 17-CV-01366. (ECF No. 11, Ex. 1.) The complaint alleged that agency managers harassed the plaintiff because of her age and in retaliation for her 2013 lawsuit. (*Id.* ¶¶ 13-25.)

In May of 2018, the arbitrator denied the plaintiff's wrongful termination challenge, finding that the agency did not retaliate against her for filing the 2013 complaint and did not harass her. (ECF No. 10 at 46-47 ("I believe that the agency did not retaliate because the

---

[5] The complaint and opposition motion incorporate the arbitrator's award by reference. *See* Fed. R. Civ. P. 10(c) and *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-231 (2d Cir. 2016).

Grievant filed a complaint with the EEOC. There were procedures in place, before the claim was filed, to help the Grievant perform in a timely manner. It is also my belief that the Grievant misinterpreted those procedures put in place, by the Agency, to be harassment.")) On August 30, 2018, the plaintiff voluntarily dismissed her complaint before Judge Amon. (ECF No. 11 at 21.) On March 12, 2019, the plaintiff, no longer represented by an attorney, moved for reconsideration of her voluntary dismissal before Judge Amon, claiming that her attorney misled her into signing it. (*Id.* at 23-24.) The Court denied her request. (*Id.* at 28-29.)

In the meantime, the plaintiff's pre-termination complaint alleging retaliation wound its way through the EEOC. According to the plaintiff, she received a Right-to-Sue letter in November of 2018, and filed this complaint—alleging that her managers harassed her for filing the 2013 complaint—on March 26, 2019. (ECF No. 16 at 5.)

## STANDARD OF REVIEW

A court evaluating a motion to dismiss must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, an action will survive only if the law recognizes the claims, and if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This standard requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Allegations in *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must read a *pro se* complaint liberally and interpret it to raise the strongest arguments it suggests, especially when it alleges civil rights violations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

## DISCUSSION

The defendant claims that the complaint should be dismissed because the plaintiff did not appeal the arbitrator's decision against her, and thus did not exhaust her administrative remedies. The plaintiff responds that her complaint is premised on her earlier Title VII complaint, does not concern her termination, and has been exhausted at the administrative level.

5 U.S.C. § 7121 and 29 C.F.R. § 1614.301(a) govern discrimination claims brought by federal employees who are bound by collective bargaining agreements. *See generally Delaney v. Hood*, No. 07-CV-471, 2009 WL 3199687, at *12 (E.D.N.Y. Sept. 30, 2009). Pursuant to Section 7121(d), an aggrieved federal employee "may raise the matter under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d); *see also O'Dwyer v. Snow*, No. 00-CV-8918, 2004 WL 444534, at *7 (S.D.N.Y. Mar. 10, 2004) ("An employee raising discrimination claims therefore must choose in which fora, either the negotiated grievance procedure or the statutory forum, [she] wishes to pursue [her] administrative remedy.") (citation omitted). The statute specifies that an employee makes her election "at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a

grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first." *Id.*; *see also* 20 C.F.R. § 1614.301(a).

An aggrieved employee cannot pursue both avenues of relief, and her election is irrevocable. *Vinieratos v. U.S., Dept. of Air Force Through Aldridge*, 939 F.2d 762, 768 (9th Cir. 1991). As a result, an employee who files a complaint under a statutory procedure cannot thereafter file a grievance under the negotiated procedure on "the same matter." 20 C.F.R. § 1614.301(a). Likewise, an aggrieved employee who files a grievance under the negotiated procedure cannot thereafter file a complaint "on the same matter" under a statutory procedure. *Id.* Finally, whichever route the employee chooses, she must exhaust all applicable administrative remedies before pursuing her claim in court. *Delaney*, 2009 WL 3199687, at *12 (citation omitted); *Fernandez v. Chertoff*, 471 F.3d 45, 54 (2d Cir. 2006).

A court deciding whether a plaintiff may seek a statutory remedy for alleged discrimination after previously invoking negotiated grievance procedures must evaluate whether the claims pertain to the same "matter." 20 C.F.R. § 1614.301(a). "Every court that has considered the issue has concluded that the word 'matter' in 5 U.S.C. § 7121 and 29 C.F.R. § 1614.301 refers to the *conduct* underlying a plaintiff's claim, as opposed to the *legal allegations* in the claim." *Wright v. Snow*, No. 02-CV-7615, 2004 WL 1907687, at *5 (S.D.N.Y. Aug. 25, 2004) (collecting cases); *Giove v. U.S. Dept. of Transp.*, 178 F. App'x 814, 818 (10th Cir. 2006) (the term "matter" "refer[s] to the underlying government action which precipitated the complaint," not the legal theory employed to challenge the government action) (citations omitted); *Guerra v. Cuomo*, 176 F.3d 547, 550 (D.C. Cir. 1999) ("[C]ourts have tended to construe the term 'matter' to encompass more than a legal claim and instead to encompass the 'underlying action' or the 'topics' raised.") (citations omitted); *Van Houten v. Gober*, No. 98-

CV-270, 1998 WL 966021, at *5 (E.D. Pa. Nov. 10, 1998) ("Two complaints refer to the same 'matter' if the disputed personnel action at the root of the employee's complaint is the same, regardless of the legal theory on which the action is challenged.").

In *Facha v. Cisneros*, 914 F. Supp. 1142, 1149-1150 (E.D. Pa. 1996), the district court did a side-by-side comparison of the allegations to determine whether the statutory complaint and union grievance concerned the same matter.[6] "If [the employee] raised a topic in both documents, or if the arbitrators assigned to handle the grievance would necessarily have needed to inquire into a topic in discharging their duties, then § 7121(d) bars [the employee] from raising that same topic in [the employee's] subsequent EEO complaint." *Id.*

A comparison of the plaintiff's allegations in the arbitration and in federal court confirms that her claims concern the same "matter" for purposes of Section 7121. All of her claims allege that agency managers began to scrutinize and criticize her work after she filed her 2013 complaint alleging a wrongful failure to promote.

| | |
|---|---|
| 2017 Arbitration: | The union's primary contention at arbitration is that the agency removed Grievant in retaliation for prior protected activity—a Title VII lawsuit filed in July 2013.... [Ms. Penalver testified that] it was not until she filed a Federal District Court EEO complaint in November 2014, and began litigation and settlement shortly thereafter, that she was placed on 100% quality review. (ECF No. 10 at 26, 35.) |
| 2017 Complaint: | This action is brought against Defendant on the basis of age discrimination and retaliation against Plaintiff for opposing discriminatory practices and/or participating in protected activity.... Plaintiff began to experience pointed forms of harassment and unsupported scrutiny of her work product. (ECF No. 11 at 4, 7.) |

---

[6] Other courts have applied the "*Facha* test" to decide whether a grievance and statutory complaint cover the same "matter." *See Zuzul v. McDonald*, 98 F. Supp. 3d 852, 861 (M.D.N.C. 2015); *Rosell v. Wood*, 357 F. Supp. 2d 123, 129 (D.D.C. 2004); *Van Houten*, 1998 WL 966021, at *5.

>       2019 Complaint:   The Retaliation/Reprisal and Harassment began when
>                         my performance was raised as a concern in February
>                         2014. This was during the time period I was in
>                         settlement negotiations with a District Court complaint.
>                         (ECF No. 1 at 10.)

Although these claims vary slightly in legal theory, they all stem from the same actions (criticism of her work), involving the same actors (supervisors Hanlon and Wada), during the same time frame (2014 to 2017).

The only discernable difference between the plaintiff's arbitration and statutory claims is the allegation that the plaintiff ultimately was terminated from her position in 2017. The plaintiff argues that her termination is a topic unique to her arbitration, so she should be permitted to revive her pre-termination statutory complaint and pursue her harassment claims in federal court. While a termination can be a separate issue from harassment, *see Van Houten*, 1998 WL 966021, at *6, that is not the case here. First, in *Van Houten*, the termination and harassment allegations concerned separate supervisors and distinct conduct. *See id.* ("The reassignment occurred on a different day, involved a different decisionmaker, and is not an automatic remedy even if Van Houten had prevailed on his harassment claims.") The termination here, as alleged by the plaintiff, was merely the final phase of Hanlon and Wada's three-year campaign to harass the plaintiff for filing her 2013 complaint. In other words, the plaintiff's termination and harassment allegations arise from the same pattern of conduct.

Second, in *Van Houten*, the subject of the plaintiff's intended subsequent action—his termination—would not necessarily have been resolved in his prior action, which raised harassment claims. *Id.* at *6 ("If Van Houten had submitted his claim to arbitration, the arbitrators would have had to resolve whether Van Houten was actually harassed by his supervisor...[t]hey would not have been compelled, however, to resolve whether his Division

Chief, in deciding to transfer him out of the class...discriminated against him because of his disability or retaliated against him for prior union or EEO activity."). Here, by contrast, the arbitrator resolved the plaintiff's harassment claim—the topic of the subsequent action—when he decided her wrongful termination claims: "I believe that the agency did not retaliate because the Grievant filed a complaint with the EEOC. There were procedures in place, before the claim was filed, to help the Grievant perform in a timely manner. It is also my belief that the Grievant misinterpreted those procedures put in place, by the Agency, to be harassment." (ECF No. 10 at 46-47.) Because the arbitrator "necessarily" resolved the issue of harassment in "discharging [his] duties," *see Facha*, 914 F. Supp. 1142 at 1149, the harassment and termination claims constitute the same matter for purposes of Section 7121.

Having determined that the arbitration and Title VII litigation concern the "same matter," I turn to the issue of the forum in which the plaintiff elected to press this matter. Under Section 7121, an employee makes her election when she files a written complaint regarding the matter pursuant to the bargaining agreement or a statutory procedure, "whichever event occurs first." 5 U.S.C. § 7121(d) and 20 C.F.R. § 1614.301(a). The plaintiff filed a Title VII complaint about her harassment with the EEOC in 2016, and thereby irrevocably elected to adjudicate her claims through statutory procedures. Once she committed to the statutory process, she was required to exhaust it, *see Delaney*, 2009 WL 3199687, at *12 (citation omitted), and Section 7121 should have foreclosed her from challenging the same matter pursuant to the union grievance procedure. Nevertheless, by pursuing the union grievance procedure in 2017, the plaintiff abandoned the statutory process.

The plaintiff admits that she has filed "many" complaints against the social security administration arising from her supervisor's alleged harassment and retaliation. (ECF No. 14 at

1.) Indeed, the record chronicles the plaintiff's efforts to preserve as many avenues of relief as possible, "hoping to stay proceedings in one forum when the prospects for relief appeared brighter in another, but acting to revive what [she] formerly put on hold when the effort of the moment appeared on the verge of a dead end." *Vinieratos*, 939 F.2d at 770. These efforts thwart the policy goals reflected in Section 7121(d)—Congress' preference that federal employees elect a single remedy rather than split claims across agencies and courts. *See Macy v. Dalton*, 853 F. Supp. 350, 354 (E.D. Ca. 1994). To safeguard these policy goals, courts hold that a federal employee who abandons her elected process to pursue a remedy elsewhere fails to exhaust her chosen remedy and thereby forecloses judicial review. *Vinieratos*, 939 F.2d at 770-72 (citing *Rivera v. United States Postal Service*, 830 F.2d 1037 (9th Cir. 1987), *Purtill v. Harris*, 658 F.2d 134 (3d Cir. 1981), and *McGinty v. United States Department of the Army*, 900 F.2d 1114 (7th Cir. 1990)).

The plaintiff elected to pursue the matter of her retaliation through Title VII when she filed a Title VII complaint in 2016. She abandoned that statutory remedy in 2017 when she elected to pursue the matter through union negotiated procedures, without notifying the union, the arbitrator, or the agency that she had a Title VII complaint on the same matter pending before the EEOC. Accordingly, I find that the plaintiff failed to exhaust her statutory remedy, and dismiss this case.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss the plaintiff's complaint is granted. A court dismissing a *pro se* complaint should grant leave to amend freely, if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alterations, quotation marks, and citation

omitted). "The standard governing leave to amend, flexible to begin with, is further liberalized for *pro se* plaintiffs." *Marcelin v. Cortes-Vazquez*, No. 09-CV-4303, 2011 WL 346682, at *2 (E.D.N.Y. Jan. 28, 2011) (citing Fed. R. Civ. P. 15(a)(2) and *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (quotation marks and citation omitted)). The Court, however, maintains discretion to deny leave to amend "in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citation omitted). Because the plaintiff cannot circumvent her failure to exhaust by changing her pleadings, I find that amendment of her claims would be futile. Accordingly, the complaint is dismissed, and the Clerk of Court is directed to close this case.

**SO ORDERED.**

s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
January 2, 2020